IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| CHARLES FREEMAN | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 6:17cv546 |
| LORIE DAVIS, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
GRANTING IN PART AND DENYING IN PART
THE DEFENDANTS' MOTION TO DISMISS

The Plaintiff Charles Freeman, a prisoner currently confined in the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are: TDCJ-CID Director Lorie Davis; TDCJ-CID Director of Chaplaincy Operations Vance Drum; Michael Unit Warden Deborah Cockrell; Region II Chaplain Dan Rose; Muslim Chaplain Akbar Shabazz; Michael Unit Chaplain Thomas Taylor; Michael Unit Chaplain Samuel Arcipreste; and Step 2 grievance investigator C. Martinez.

**I. Background**

Freeman describes himself as a practitioner of what he terms "non-denominational Islam." However, he contends that the TDCJ-CID chaplaincy office, through Chaplain Shabazz, has made Sunni Islam the sole and exclusive denomination of Islam allowed to be practiced within TDCJ-CID. He asserts that Chaplain Shabazz has made no secret of his disdain towards non-Sunni Muslims and that Chaplain Shabazz uses agents to spy on these Muslims.

1

Freeman complains that although Catholics and Protestants are afforded separate services for worship, all Muslims, including Sunnis, Shiites, and Nation of Islam prisoners are required to participate in one combined service which is overseen and controlled by Sunni Muslims. Prisoners who are not Sunni Muslim are prohibited from teaching the tenets of their denominations.

Freeman stated that he has been at the Michael Unit for over three years and has witnessed the oppression of non-Sunni Muslims by Chaplain Shabazz. He asserted that in November of 2016, a well-known Shiite Muslim named Eric Cantrell-Holmes was sent to the Michael Unit, but after Holmes arrived, Chaplains Shabazz, Rose, and Taylor met with Sunni Muslim inmates, including prisoners Canty, Pryor, and Hawkins. Freeman claims that the chaplains told these inmates to oppress Holmes and anyone associated with him and not to allow Holmes to teach, lead prayers, or participate in any leadership role within the Muslim community even though Holmes' arrival had caused numerous inmates to request that Holmes be allowed to do so.

According to Freeman, Holmes received threats from Shabazz's henchmen and stopped attending services at which he was not welcome. In May of 2017, Freeman states that he asked Holmes to participate with him in the 30-day fast during the month of Ramadan and Holmes replied that he had to get permission from one of the chaplaincy directors because Chaplain Shabazz and his inmate coordinators had instructed Chaplain Taylor not to allow Holmes to fast during Ramadan.

Freeman states that Holmes was granted permission to fast by another chaplain, Rutledge, but the inmate Muslim coordinators Canty and Pryor did not like this. After Ramadan began on May 25, 2017, Canty and Pryor forced Freeman and Holmes to stop attending or participating in the Ramadan activities. Freeman states that Canty and Pryor were upset because Freeman and Holmes had met with a small group of Muslim inmates on June 5 to study verses from the Qu'ran.

According to Freeman, Canty and Pryor contacted Chaplains Shabazz, Taylor, and Arcipreste. The next day, June 6, Freeman states that he and Holmes tried to enter the facility where Ramadan activities were held, but two prisoners named Hawkins and Harvey, acting under orders from Canty and Pryor, physically prevented them from entering. The prisoners told Freeman and

2

Holmes that per Chaplain Shabazz's instructions to Canty and Pryor, they were authorized to keep Freeman and Holmes out of further Ramadan participation and out of Islamic services in general. Some time around July of 2017, Freeman contends that a meeting was held between Chaplain Shabazz and Holmes, at which Holmes was told that he and Freeman could not practice Islam anywhere within TDCJ. As a result of this meeting, Freeman states that he, Freeman, was removed from the service participation list for Islamic services and barred from ever being allowed to enter. He asserts this was done because the chaplaincy department took the word of inmates Canty, Pryor, and Hawkins that Freeman and Holmes were being disruptive by meeting with a small group of Muslims during Ramadan. Freeman complains that he was never given the chance to respond to this allegations.

Freeman also complained that the TDCJ grievance procedure was "inadequate and corrupt." He asserted that he was the victim of a conspiracy and that he had been subject to intentional infliction of emotional distress. Freeman stated that TDCJ had operated under a consent decree called *Brown v. Beto* for a number of years, but in 2012, TDCJ implemented new policies circumventing this decree. In May of 2014, he stated that U.S. District Judge Kenneth Hoyt ordered TDCJ to return to the decree in *Brown*. However, he complained that despite the passage of over three years, TDCJ has yet to correct the matters which Judge Hoyt cited as unlawful practice.[1]

## II. The Defendants' Motions to Dismiss

The Defendants Davis, Cockrell, Rose, Shabazz, Taylor, Arcipreste, and Martinez filed a motion to dismiss, joined by Drum in his official capacity only. This motion to dismiss argued that Freeman's claims for damages against the Defendants in their official capacities are barred by the Eleventh Amendment and that Freeman cannot maintain any individual-capacity claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA). The Defendants invoked the

---

[1] Judge Hoyt's decision was stayed by the Fifth Circuit and the Supreme Court denied the plaintiff's application to vacate the stay. *Brown v. Livingston*, 134 S.Ct. 2869 (June 25, 2014). The decision remains stayed to this day.

3

defense of qualified immunity and argued that Freeman's pleadings did not implicate the Establishment Clause. The Defendants further argued that Freeman's complaints concerning the grievance procedure failed to state a claim upon which relief could be granted, his allegations did not state an official-capacity claim under RLUIPA, he did not set out viable claims for conspiracy or intentional infliction of emotional distress, and he cannot bring a separate claim challenging alleged violations of the consent decree in Brown v. Beto.

The Defendant Vance Drum filed a separate individual-capacity motion to dismiss stating that his arguments are not legally different from those raised by the other Defendants in their motion to dismiss. Freeman did not file a response to either motion.

**III. The Report of the Magistrate Judge**

The Magistrate Judge set out the facts of the case and the legal standards applicable to Rule 12(b)(6) motions to dismiss. In order to survive a motion to dismiss, the Magistrate Judge said, a plaintiff must plead factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged and which raises the right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, there must be more than a sheer possibility that the defendant acted unlawfully. *Id.* at 678. Conclusions and naked assertions devoid of further factual enhancement are not sufficient. *Id.*; *see also Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

Upon review of the pleadings, the Magistrate Judge determined that Freeman did not set out a viable claim under the Establishment Clause because TDCJ provided the reasonable accommodation of having worship services for Muslim inmates, no specific religion was promoted or endorsed, and the denial of separate services fell short of fostering one religious practice over another. *See Marshall v. Pennsylvania Department of Corrections*, civil action no. 3:12cv0351, 2015 U.S. Dist. LEXIS 32773, 2015 WL 1224708 (M.D.Pa., March 17, 2015), *aff'd* 690 F.App'x 91, 2017 U.S. App. LEXIS 10006, 2017 WL 2438196 (3rd Cir., June 6, 2017), *citing Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

4

Similarly, the Magistrate Judge stated that Freeman did not state a viable claim with his allegation that Shiite or Nation of Islam prisoners are not permitted to teach, lead prayers, or deliver sermons during Muslim services. *See Jones v. Shabazz*, 352 F.App'x 910, 2009 U.S. App. LEXIS 24308, 2009 WL 3682569 (5th Cir., November 5, 2009). Nor did Freeman set out a cognizable claim with regard to Holmes' right to teach, lead prayers, or participate in any leadership role in the Muslim community.

Freeman asserted that he was removed from the service participation list for Islamic services and not allowed to attend services, and that he was also prevented from participating in Ramadan activities. He asserted that the inmates who enforced this exclusion told him it was done according to instructions from Chaplain Shabazz. The Magistrate Judge determined that Chaplains Shabazz, Rose, Taylor, and Arcipreste should be required to answer this claim.

Next, the Magistrate Judge determined that Freeman had not stated a viable claim against the supervisory officials, Lorie Davis, Warden Cockrell, and former chaplaincy director Vance Drum. The Magistrate Judge further concluded that Freeman did not have a constitutionally protected liberty interest in the grievance procedure and that Freeman's conspiracy allegations failed to state a claim upon which relief may be granted. Likewise, the Magistrate Judge determined that Freeman's claims of intentional infliction of emotional distress failed to state a claim upon which relief may be granted and that a failure by TDCJ officials to comply with the terms of a consent decree did not amount to a constitutional violation.

The Magistrate Judge thus recommended that Chaplain Drum's motion to dismiss be granted and that the motion to dismiss filed by the Defendants Davis, Cockrell, Rose, Shabazz, Taylor, Arcipreste, and Martinez should be granted in part and denied in part. Specifically, the Magistrate Judge recommended that this motion to dismiss be granted as to all claims except for Freeman's claims that he was removed from the service participation list for Islamic services and not allowed to attend those services, and that he was prevented from participating in Ramadan activities in May

5

and June of 2017. The Magistrate Judge also recommended that the Defendants Drum, Davis, Cockrell, and Martinez be dismissed from the lawsuit as parties.

## V. The Defendants' Objections

In their objections, the Defendants note the two claims which the Magistrate Judge recommended be allowed to continue and state that to the extent Freeman invokes RLUIPA, the claims should be dismissed because an action under RLUIPA does not exist for individual-capacity claims. They argue that the First Amendment claims against them should be dismissed because Freeman did not overcome their entitlement to qualified immunity. They assert that the Report seeks to impose liability upon them for the actions of other prisoners.

Specifically, the Defendants assert that TDCJ granted permission to participate in Ramadan activities, but that two inmates, Canty and Pryor, prevented Freeman from attending and participating. When he tried to enter the facility, two other inmates, Hawkins and Harvey, acting on the command of Canty and Pryor, impeded his progress and engaged in a physical altercation with him. They quote Freeman as stating that he was removed from the service participation list because the chaplaincy department took the word of a set of offenders - Canty, Pryor, and Hawkins - that Freeman and Holmes were disruptive. The Defendants contend that they are entitled to qualified immunity because Freeman fails to identify controlling authority from which the unlawfulness of the conduct follows immediately.

In reviewing a motion to dismiss, all well-pleaded factual allegations are taken as true and those facts are viewed in the light most favorable to the plaintiff. *Firefighters' Retirement System v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018). According to Freeman, the Defendants Shabazz, Rose, and Taylor met several times with inmates Canty, Pryor, and Hawkins after inmate Holmes arrived at the Michael Unit. Freeman and Holmes met with a small group of inmates on June 5, 2017, to study the Qu'ran, but this upset Canty and Pryor, who contacted Shabazz, Taylor, and Arcipreste. The next day, Hawkins and Harvey blocked Freeman and Holmes from participating in Ramadan activities. Hawkins and Harvey told Freeman and Holmes that as

per Chaplain Shabazz's instructions to Canty and Pryor, which instructions were given in the presence of Chaplains Taylor and Arcipreste, they (Hawkins and Harvey) were "fully authorized" to keep Freeman and Holmes from participating in Ramadan, and in Islamic services in general, by "any means necessary."

The Defendants assert other inmates blocked Freeman from attending religious services, but fail to note that according to Freeman, these inmates were acting on instructions from the defendant chaplains in doing so. Freeman asserts that these inmates were given these instructions because the chaplaincy office sought to suppress all forms of Islam other than Sunni Islam; he asserts that Holmes was informed by Shabazz that he and Freeman would not be allowed to practice Islam anywhere in TDCJ because Holmes is an influential Shiite Muslim and Freeman is one of his supporters.

Where a claim for qualified immunity is made, the district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Freeman asserts Chaplain Shabazz sought to suppress all forms of Islam other than Sunni Islam and gave instructions to inmates to block Freeman and Holmes from participating in Islamic services because they did not follow Sunni Islam, despite the fact that Holmes had received permission to participate in Ramadan services from Chaplain Rutledge.

Prisoners are entitled to a reasonable opportunity to practice their religious faith. *Pedraza v. Meyers*, 919 F.2d 317, 320 (5th Cir. 1990). This means that restrictions on a prisoner's right to practice his religion must be reasonably related to legitimate penological interests. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). Freeman's allegations, if true, would suffice to overcome Chaplain Shabazz's claim to qualified immunity.

Freeman contends that Chaplain Rose participated in several meetings with Sunni Muslim inmates Canty, Pryor, and Hawkins. During these meetings, the inmates were instructed to oppress Holmes and anyone associated with him, presumably including Freeman. Rose, along with Shabazz

and Taylor, approved of and backed the actions of Canty and Pryor in preventing Freeman from attending and participating in Ramadan activities. He indicates that Chaplain Rose had a vendetta against Holmes because of prior complaints and a civil action which Holmes had filed at the Stiles Unit, and that he, Freeman, suffered adverse consequences because he was associated with Holmes.

Freeman's pleadings, taken as true, allege that Chaplain Rose denied him a reasonable opportunity to practice his faith because Freeman did not subscribe to the tenets of Sunni Islam and because he was associated with an individual against whom the members of the chaplaincy department had a personal grudge because of complaints made by this individual in the past. These allegations are sufficient to survive the invocation of qualified immunity at the motion to dismiss stage of the proceeding. *See Rader v. Cowart*, 543 F.App'x 358, 2013 U.S. App. LEXIS 20415, 2013 WL 5509172 (5th Cir., October 4, 2013) (motions to dismiss "are generally evaluated on the pleadings alone and challenge a complaint's legal sufficiency, in contrast to postdiscovery motions for summary judgment which evaluate whether a genuine issue of material fact remains after considering both sides' proffered evidence"); *accord*, *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

Freeman contends that Chaplain Taylor also had several meetings with Canty, Pryor, and Hawkins, at which the inmates were told to oppress Holmes and anyone associated with him. He states that Taylor was one of the chaplains who gave approval for Canty and Pryor to prevent Freeman from participating in Ramadan activities and that Taylor was present when Chaplain Shabazz instructed Canty and Pryor to prevent Freeman and Holmes from participating in Ramadan by any means necessary.

As with Chaplain Rose, Freeman's allegations against Chaplain Taylor, taken as true, show that Taylor denied him a reasonable opportunity to practice his faith because Freeman did not subscribe to the tenets of Sunni Islam and because he was associated with an individual against whom the members of the chaplaincy department had a personal grudge because of complaints made

8

by this individual in the past. This is sufficient to survive the invocation of qualified immunity at the motion to dismiss stage of the proceeding.

Freeman states that after he and Holmes met with a group of inmates to study the Qu'ran on June 5, Canty and Pryor contacted Chaplains Shabazz, Taylor, and Arcipreste. He contends that Chaplain Arcipreste was present when Chaplain Shabazz told Canty and Pryor to prevent Holmes and Freeman from attending further Ramadan services or Islamic services in general. Freeman asserts that he was removed from the service participation list for Islamic services because that was the wish of Shabazz, Taylor, and Arcipreste; he states that he was "simply removed from the list of participants, ordered to be assaulted and hindered by defendants Shabazz, Taylor, and Arcipreste, and other offenders were given authority and dominion over him in their capacities as assets/agents for defendant Shabazz." These allegations, taken as true, are sufficient to survive the invocation of qualified immunity at the motion to dismiss stage of the proceeding. The Defendants' objections are without merit.

## VI. The Plaintiff's Objections

In his objections, Freeman complains that the Defendants' motion to dismiss "appears to filed for the sole purpose of confusing the issues presented in the complaint and misconstruing the factual matters that creates actionable claims against the Defendants in both their official and individual capacities." He asserts that the refusal to allow the separate services for the different denominations of Islam violates what he refers to as the "Entitlement Clause," citing Article IV, §2(1). Clause One of Article IV, §2 of the Constitution, generally known as the Privileges and Immunities Clause, was drawn directly from Article Four of the Articles of Confederation and provides that "Citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." The Supreme Court has stated that this clause of Article IV, sec. 2 is designed to "ensure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy." *Toomer v. Witsell*, 334 U.S. 385, 395, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948).

The Privileges and Immunities Clause of Article IV is a source of only a handful of specific rights. *Slaughterhouse Cases*, 16 Wall. 36, 74-80, 21 L.Ed. 394 (1873); *see Washington v. Glucksberg*, 521 U.S. 702, 759 n.6, 117 S.Ct. 2258, 2279 n.6 (1997) (Souter, J., concurring). The rights included are those which bear on the vitality of the nation as a single entity, with a view toward creating a national economic union. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 279-80, 105 S.Ct. 1272, 84 L.Ed.2d 205 (1985); *see Corfield v. Coryell*, 6 F.Cas. 546 (No. 3,230) (Circuit Court of Pennsylvania 1823). Freeman has not shown any basis for invoking rights under the Privileges and Immunities Clause, and his objection on this point is without merit.

Next, Freeman asserts that the Establishment Clause is violated if TDCJ hires only Sunni Muslim chaplains, creates rules and policies which afford guaranteed services only for Sunni Muslims, and allows only Sunni Muslim materials in the chapel. He suggests that the chapel could be partitioned to allow Sunni and non-Sunni services to take place at the same time and asserts that space is always found for Christian programs such as Kairos Walk but the space always seems to be scarce for Muslim programs.

Freeman contends that *Marshall v. Pennsylvania Department of Corrections*, cited by the Magistrate Judge, is distinguishable because unlike the situation in that case, Freeman maintains that no provisions whatever are made for non-Sunni Muslims in TDCJ. He complains, for the first time in his objections, that prisoners who are not Sunni Muslim are forced to modify their religious beliefs in order to participate in Islamic services. Specifically, he states that: non-Sunni Muslims cannot bring religious materials to services, while Sunni Muslims can; non-Sunni Muslims cannot "group up and study their beliefs at services," while Sunni Muslims can; non-Sunni Muslims cannot "freely make congregational prayers under their respective prayer rituals, such as those of the Shiite School of Thought which are completely different from the Sunni School of Thought." Instead, Freeman asserts that they are "forced to make congregational prayer with Sunni Muslims and follow their prayer recitals while standing in the Sunni Muslim ranking structure, even though many non-Sunni Schools of Thought deem this ranking structure, and prayer recital, to be incorrect."

Furthermore, Freeman complains that non-Sunni Muslims are prohibited from giving sermons, but must sit and listen to Sunni Muslims, and there are no non-Sunni area chaplains with whom to counsel. He contends that these conditions amount to a modification of religious beliefs and places a substantial burden on the religious exercise of non-Sunni Muslims.

To the extent Freeman raises new claims for the first time in his objections, such claims are not properly before the Court. *Finley v. Johnson*, 243 F.3d 215, 218 n.3 (5th Cir. 2001). In any event, his objections are without merit. The Fifth Circuit has held there is no First Amendment violation in the fact that Shiite or Nation of Islam Muslims cannot teach, lead prayer, or form Qu'ranic study groups. *Jones v. Shabazz*, 352 F.App'x at *914-15. Nor was there a RLUIPA violation in *Jones*; the Fifth Circuit held that the structure of TDCJ Muslim services constituted the least restrictive means to advance a compelling governmental interest.

Although Freeman complains that he has been forced to modify his religious behavior, this is part of a claim under the RLUIPA; the Fifth Circuit has held that for purposes of applying RLUIPA, a government action creates a substantial burden on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violates his religious beliefs. *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). However, as the Defendants correctly assert, Freeman cannot maintain a RLUIPA lawsuit for damages against them in their individual or official capacities. *Coleman v. Lincoln Parish Detention Center*, 858 F.3d 307, 308 (5th Cir. 2017).

To the extent Freeman seeks declaratory or injunctive relief under RLUIPA, his claims lack merit. He asks for an injunction affording the various denomination the right to be practiced in TDCJ-CID and that Muslim chaplains of various denominations be hired. In *Davis v. Wall*, 50 F.3d 1033, 1995 U.S. App. LEXIS 43151, 1995 WL 136204 (5th Cir., March 9, 1995), the plaintiff complained that he was not being afforded the right to practice his religion, Nation of Islam, and sought injunctive relief requiring the prison to hire a Nation of Islam chaplain. The district court granted summary judgment for the defendants and the Fifth Circuit affirmed, holding that the prisoner had been accorded a reasonable opportunity to practice his religious faith, including the

option of placing an ordained minister of his faith on his visiting list, and had no legal basis for his complaint.

While *Davis* was a First Amendment case and made no reference to RLUIPA or its predecessor statute, the Religious Freedom Restoration Act, the district court's opinion in *Jones v. Shabazz*, civil action no. 4:06cv1119, 2007 WL 2873042 (S.D.Tex., September 28, 2007), *aff'd* 352 F.App'x 910 (5th Cir., November 5, 2009) cited *Davis* in rejecting the plaintiff's claims under the First Amendment and RLUIPA that TDCJ hired only Sunni chaplains and did not hire any Nation of Islam chaplains. *See also Scott v. Pierce*, civil action no. 4:13cv3572, 2015 WL 13544783 (S.D.Tex., September 25, 2015), *aff'd* 689 F.App'x 341, 2017 U.S. App. LEXIS 8609, 2017 WL 2180954 (5th Cir., May 16, 2017) (rejecting claim by adherent of the Moorish Science Temple of America complaining that he is not allowed to practice his religion because a separate service for the Moorish Science Temple is not provided and that "defendants want all Muslims to worship the way [Chaplain] Shabazz says they should"). Freeman has not shown any legal basis for an injunction directing that the various denominations of Islam be allowed to practice within TDCJ or requiring TDCJ to hire Islamic chaplains from various denominations.

Freeman also requests an injunction to "stop the systematic oppression of individuals that practice an Islamic denomination distinct from Sunni Islam," and to "cease with the use of offenders as assets for defendant Shabazz and agents for the state, and rescind the authority granted to certain offenders over others through the Chaplaincy Department." Fed. R. Civ. P. 65 requires an injunction to be "specific in terms; [and] describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The injunction must be narrowly tailored to remedy the specific action giving rise to the order and an injunction fails to meet these standards when it is overbroad or vague. *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004). These aspects of Freeman's requested injunctive relief are both vague and overbroad and thus cannot be granted.

Furthermore, claims for injunctive relief may only be brought against the Defendants in their official capacities. *See, e.g.*, *Leyland v. Edwards*, 797 F.Supp.2d 7, 12 (D.D.C. 2011), *appeal dismissed* 2012 U.S. App. 17122, 2012 WL 3797639 (D.C.Cir., August 15, 2012); *Crawford v. City of Houston*, 386 F.Supp. 187, 192 (S.D.Tex. 1974). Freeman sues only TDCJ-CID Director Lorie Davis and former chaplaincy director Vance Drum, who has since retired, in their official capacities. He does not show that he is likely to suffer future injury by either of these defendants or that the requested injunctive relief will prevent that future injury. *See James v. City of Dallas, Texas*, 254 F.3d 551, 563 (5th Cir. 2001), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675) (past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief). Freeman has not shown any basis for the injunctive relief he seeks.

With regard to qualified immunity, Freeman correctly asserts that this defense only applies to claims for damages and not requests for injunctive relief. The Magistrate Judge did not apply the qualified immunity defense to Freeman's requests for injunctive relief and determined that Freeman's allegations were sufficient to overcome the qualified immunity defense interposed by Chaplains Shabazz, Rose, Taylor, and Arcipreste as to certain claims at the motion to dismiss stage of the proceeding. Freeman's assertion on this point does not show any valid basis upon which to set aside the Report of the Magistrate Judge.

## VII. Conclusion

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the parties objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the parties' objections are without merit. It is accordingly

**ORDERED** that the parties' objections are overruled and the Report of the Magistrate Judge (docket no. 19) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendant Vance Drum's motion to dismiss in his individual capacity (docket no. 18) is **GRANTED**. It is further

**ORDERED** that the motion to dismiss filed by the Defendants Lorie Davis, Vance Drum (in his official capacity), Deborah Cockrell, Dan Rose, Akbar Shabazz, Thomas Taylor, Samuel Arcipreste, and C. Martinez (docket no. 13) is **GRANTED** as to all of the claims *except for* Freeman's allegations that he was removed from the service participation list for Islamic services and not allowed to attend those services, and that he was prevented from participating in Ramadan activities in May and June of 2017. These two claims shall be allowed to proceed, and all remaining claims are **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that the Defendants Lorie Davis, Vance Drum, Deborah Cockrell, and C. Martinez are **DISMISSED WITH PREJUDICE** as parties to this lawsuit.

So **ORDERED** and **SIGNED September 5, 2018.**

_____
Ron Clark, Senior District Judge